## No. 35.

SOCIEDAD UNION ESPANOLA, Etc., *v.* ANDRES DOCURRO *et al.*

1. Where an "unauthorized corporation" or "private society" is organized for the purpose of creating a common fund and providing a tomb, and the members by its rules are to receive, in return for dues and fees, relief and medical treatment during illness, burial at death, and certain specified assistance to their widows and orphans when left in necessitous circumstances; held, that the death of any member does not dissolve the association.

2. The interest in the assets of a member of such an association, does not pass to his heirs, but lapses in favor of his associates.

3. Where the law requires a suit in favor of such an association to be brought in the name of all its members, the heirs of any such member· dying, pending the suit, need not be made parties.

4. This Court, in determining such a cause, will not strike out from the judgment appealed from the shares or *pro rata* of members who have died during the pendency of the appeal.

5. Where the treasurer of such an association furnishes a bond, sometime after his election, he and his surety, members of such association, are chargeable with knowledge of the character and duties of the office he holds, and the nature of the bond required. Even though such bond be

signed sometime after the election, it will cover funds which have come into his hands at any period after he became such treasurer.

6. Where the surety bound himself as surety for the "funds and other appurtenances" of the association, the bond covers whatever he may have regularly in his hands at the time of executing the same.

*Appeal from Fourth District Court. Houston, Judge.*

*E. Sabourin* for plaintiffs.

*S. Belden* for defendants, appellants.

McGLOIN, J.—Plaintiffs, 246 in number, with the six de-fendants, composed the Sociedad Union Espanola de Benefi-cencia Mutua. Defendant, Andres Docurro, on January 4th, 1874, was elected treasurer for two years, and gave bond as such, with his co-defendant, Jacinto Baltar, as surety. He was elected again to the same position for a similar term, and furnished the same security upon his bond. It was discovered towards the end of March, 1876, that he was a defaulter, and he was promptly divested of his office, and the surety duly no-tified. It appears, by a statement which he furnished, bearing date 31st March, 1876, and other evidence, that the amount of his defalcation was $717 57. The judge *a quo*, after hearing, gave judgment *in solido* against both defendants, and jointly in favor of all the plaintiffs, for the sum demanded in the peti-tion. The defendants, Docurro and Baltar, appealed. The other four defendants were merely impleaded as such, because they had refused to join as plaintiffs.

It is suggested and admitted upon both sides that since the date of the judgment several of the plaintiffs have died. De-fendant, Baltar, appellant, objected to going to trial, until the heirs or representatives of said deceased plaintiffs were made party. The suggestion of these deaths was first made in this Court, November 23d, 1881, and this being the end of June, 1881, there has been ample delay for the publications required in such cases by the rules of this Court. It does not seem clear to us from said rules that one appellee need concern him-

self about the death of his co-appellee, or that it is the duty of any one but an appellant to make the publication, where it is an *appellee* who has died pending the appeal. We have not, however, found it necessary to determine this question, having reached a conclusion determinative of this issue upon other grounds. The plaintiffs have not formed themselves into an incorporated association under the laws of this State. They are not organized for any purpose, such as makes them a partnership, ordinary or commercial. The company they have formed may be either the " unauthorized corporation" or the "private society," mentioned in La. Civil Code, Art. 446. By that article it is entitled to sue in the name of the individual members, as has been done in this case.

It is true, that the right of succession is one of the privileges that the law accords to corporations, but it does not follow that parties to a private society, or an unauthorized corporation, may not, by stipulation, create what shall be practically such a right. Partners might, in their articles of agreement, provide that the copartnership shall continue after the death of any member, and that the interest of each in the business and assets of the firm shall be a life one only, terminating absolutely on death, the assets, etc., to be divided only amongst such of the members as might survive at a particular date, or who should remain when the firm was actually dissolved. So members of beneficial or mutual insurance companies may specify what sum their widow or heirs shall receive upon their own deaths, and this would amount to a stipulation that the company shall continue unaffected by such decease, and that all the interest resulting from the membership of the departed, shall be this claim of his heir or representative as a creditor upon the association.

The Sociedad Union Espanola de Beneficencia Mutua adopted what were called " regulations and general laws," which, of course, constituted the articles of agreement between all who were, or subsequently became, members. These laws or regulations declare the objects of the society to be " exclu-

sively to devote itself to alleviate and succor their members in distress and sickness, and procure decent burial at their demise." By other provisions, members, upon admission, pay $10 as burial or tomb dues, and monthly dues thereafter. This entitles them and their families to medical treatment and pecuniary relief when sick, and decent burial in the tomb of the association. At the death of a married member, leaving a family in distress, by virtue of another clause, a donation, not to exceed $50, is made to his widow and orphans.

From all this, it is evident that this is strictly a beneficial society; that for their dues the members expect and receive certain stipulated advantages; that the interest of the members and their heirs extends no farther than the right of decent burial in the society tomb; and in case of a married member, leaving a necessitous family, that the widow and orphans receive the donation referred to.

By the agreement which these deceased members have made with their fellows, their deaths were not to destroy this society, or compel its liquidation, and no rights, as members to its assets, were to pass to heirs or representatives. If the first members, who died, opened by their death the way to heirs and representatives to force a liquidation and the division of the assets of this association, including the tomb, it is evident that the survivors could not receive relief, medical treatment and burial by the association, such as they hoped to secure by joining it.

We consider, therefore, that the heirs or legal representatives of the deceased members are not necessary parties to the suit; that by their death the interest of each was divested in the assets of the society, and vested in, or rather lapsed in favor of their former associates; that this state of facts is shown by the record, and has the same effect as if the living plaintiffs, upon the arising of this question, had filed the written assignment to themselves of the interests of their deceased brethren, duly executed before death.

Upon the merits of the case, appellant contends that he, as

surety, should not be sued until judgment had against his principal and execution returned *nulla bona*. There is nothing in this case which takes it from under the operation of La. C. C. Art. 3051, which authorizes the citing of the principal and the surety in the same suit. It is also claimed that the second bond was not signed by Baltar until March, 1876, whereas Docurro was elected in January, 1876, and the moneys for which he is in default were collected in the interim, and so the bond does not extend thereto. Docurro and his surety were both members of the association, and so charged with knowledge of its laws. The bond was given in accordance with these laws, and was to cover the whole of Docurro's term. When Baltar signed, he signed for Docurro as treasurer, such as that officer was defined in those laws and for the term designated therein. At what particular period his signature was affixed, made no difference, so long as he was not deceived or misled, of which there is no proof. Furthermore, by the stipulations of the bond, he bound himself as follows:

" And now, for better security of whatever funds and other appurtenances I may have in my possession, of the above mentioned association, appears Mr. Jacinto Baltar, as security, for the fulfilment by me of the condition mentioned above, signing this with me," etc.

It will be seen that Baltar bound himself as surety for the "funds and other appurtenances" which Docurro might have in his possession. Under such a stipulation it made no difference when he received the same. Baltar would have been equally bound had it been a balance received by Docurro from a predecessor, or remaining in his hands from his own preceding administration.

The judgment in this case was not in favor of the association as such, although it is not clear that it could not have been so rendered under Civil Code, Art. 446. It is, however, in favor of all these plaintiffs, some of whom are dead. Nevertheless, it appears in the record that the survivors are entitled to the share of their deceased members as well as their own, and,

therefore, we cannot reduce the judgment by striking out the proportions which would have come to the latter had they survived.

If it had been asked, we would have amended the judgment appealed from, so as to remove all doubt, and make it clearly responsive to our views upon this question. As, however, appellees have not prayed for an amendment, we are at liberty only to approve the judgment appealed from.

Judgment affirmed. Rehearing refused.